

*I7*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MOHMMED AL-SHIHABI, M.D.

        Defendant.

Case: 2:25-cr-20450
Assigned To : Goldsmith, Mark A.
Referral Judge: Patti, Anthony P.
Assign. Date : 6/17/2025
Description: INDI USA V. AL-SHIHABI (NA)

VIO:  18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 2

---

### INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.     Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA") to beneficiaries who required home health services because of an illness or disability that caused them to be "homebound." Medicare "Part B" covered the cost of physicians' services, medical equipment and supplies, diagnostic laboratory services, and home health services.

4.     National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015. AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5.     Wisconsin Physicians Service ("WPS") administered Medicare Part B for claims arising in the state of Michigan. CMS contracted with WPS to receive, adjudicate, process, and pay claims.

6.     Payments under Medicare were often made directly to a provider of goods or services, rather than to a Medicare beneficiary. This payment occurred

when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7.      Physicians, clinics, and HHAs, among other medical and service providers, were collectively referred to as "providers." When enrolling in Medicare, providers agreed to abide by Medicare's policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

8.      Upon enrollment, the provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as a "National Provider Identifier" or "NPI"). When the provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that provider.

9.      In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g.,

3

a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, beneficiary, and services rendered.

10.     Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.  Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.  These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the provider.

11.     Providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered.  Medicare regulations required providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted.  Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form.  These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the provider.

4

12.    Medicare only covered home health services, if, on the claimed dates of service:

a.    the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b.    the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

c.    the HHA must have been approved by Medicare (Medicare-certified); and

d.    the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

13.    Under Medicare Part B, physician home visit services were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Providers were required to: (a) document the medical necessity of these services; (b) document the date the service was performed; (c) identify the provider who performed the service; and (d) identify the clinic, physician office, or group practice where the

5

provider provided the service.  Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

14.    Medicare would not reimburse claims that were procured through the payment or receipt of kickbacks and bribes.

### The Defendant and Relevant Entities and Individuals

15.    Defendant MOHMMED AL-SHIHABI, a resident of Wayne County, Michigan, was a licensed Medical Doctor in the State of Michigan.

16.    Doctors Home Line PLLC ("Doctors Home Line") was a Michigan business entity doing business within the Eastern District of Michigan.  Doctors Home Line was enrolled as a participating provider with Medicare and submitted claims to Medicare.  MOHMMED AL-SHIHABI controlled, owned, and operated, in whole or in part, Doctors Home Line from 2018 through at least in or around June 2025.

17.    Individualized Home Health Care, P.C. ("Individualized") was a Michigan business entity doing business within the Eastern District of Michigan. Individualized was enrolled as a participating provider with Medicare and submitted claims to Medicare.

18.    Ibrahim Sammour, a resident of Wayne County, Michigan, was a Registered Nurse in the State of Michigan and controlled, owned, and operated, in whole or in part, Individualized from at least September 2020 through October 2022.

6

19.     Bashier Sammour, a resident of Wayne County, Michigan, was the documented Resident Agent and President of Individualized beginning in or around September 2020.

## COUNT 1
## 18 U.S.C. § 1349
## (Health Care Fraud Conspiracy)

20.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

21.     Beginning in or around October 2020, and continuing through in or around October 2022, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, defendant MOHMMED AL-SHIHABI, did willfully and knowingly, combine, conspire, confederate, and agree with Ibrahim Sammour and others, known and unknown to the Grand Jury, to execute a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

7

## Purpose of the Conspiracy

22.     It was a purpose of the conspiracy for MOHMMED AL-SHIHABI and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare that were procured by illegal kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary, (ii) ineligible for Medicare reimbursement, and (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of MOHMMED AL-SHIHABI and his co-conspirators, and to further the fraud.

## Manner and Means

23.     The manner and means by which the MOHMMED AL-SHIHABI and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

24.     Beginning in or around February 2018, MOHMMED AL-SHIHABI organized Doctors Home Line as a professional limited liability company in the State of Michigan.  In or around May 2018, MOHMMED AL-SHIHABI certified to Medicare that Doctors Home Line would comply with all Medicare rules and regulations and federal laws including that he would not knowingly present or cause

to be presented a false and fraudulent claim for payment by Medicare.  Despite this certification, MOHMMED AL-SHIHABI proceeded to present and cause to be presented false and fraudulent claims for payment by Medicare as described below.

25.     Beginning in or around October 2020, Ibrahim Sammour exercised ownership and control over Individualized by and through a straw owner, Bashier Sammour.   Ibrahim Sammour, his co-conspirators, and others concealed and disguised his ownership interest and/or control over Individualized by, among other things, making material misrepresentations and omissions in corporate filings with the State of Michigan, enrollment applications and claims submitted to Medicare, and other documents.

26.     MOHMMED AL-SHIHABI and others devised and participated in a scheme in which Ibrahim Sammour and his co-conspirators provided Medicare beneficiaries to MOHMMED AL-SHIHABI to be certified for home health care. Many of these Medicare beneficiaries were obtained through the payment of illegal kickbacks and bribes and did not qualify for Medicare reimbursements of home health care services.

27.     In exchange for providing MOHMMED AL-SHIHABI access to valuable Medicare beneficiaries, who MOHMMED AL-SHIHABI could exploit to bill for medically unnecessary services or services not provided as represented, MOHMMED AL-SHIHABI agreed with Ibrahim Sammour and others to refer these

Medicare beneficiaries to Ibrahim Sammour and his co-conspirators for home health services purportedly provided by Individualized.

28. MOHMMED AL-SHIHABI agreed with Ibrahim Sammour and others to falsify, fabricate, alter, and cause the falsification, fabrication, and alteration of medical records, including but not limited to, home health certifications and plans of care and physician visit notes, by and through Doctors Home Line, to support claims submitted by Ibrahim Sammour and others to Medicare for home health care services, and other services, that were medically unnecessary or were not provided as represented.

29. Between October 2020 and October 2022, MOHMMED AL-SHIHABI was the primary source of home bound certifications for Individualized.

30. Based on MOHMMED AL-SHIHABI's homebound certifications, MOHMMED AL-SHIHABI, Ibrahim Sammour, their co-conspirators, and others submitted and caused the submission of false and fraudulent claims to Medicare for home health care services purportedly provided by Individualized in an amount exceeding $1.5 million. As a result, Individualized was paid approximately $1.3 million by Medicare.

31. It was MOHMMED AL-SHIHABI's practice to retain the Medicare beneficiaries referred to him from Ibrahim Sammour, by and through Individualized, as patients of Doctors Home Line and to subsequently bill Medicare for services that

10

were medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

32.     From on or about October 1, 2020 through at least on or about February 21, 2025, for Medicare beneficiaries obtained from Individualized or Ibrahim Sammour, MOHMMED AL-SHIHABI and others submitted and caused the submission of false and fraudulent claims for services purportedly provided by MOHMMED AL-SHIHABI or Doctors Home Line, in an amount exceeding $450,000.  As a result, Doctors Home Line was paid approximately $230,000 by Medicare.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-5**
**18 U.S.C. §§ 1347 & 2**
**(Health Care Fraud)**

33.     Paragraphs 1 through 19 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

34.     Beginning on or before October 1, 2020, and continuing through at least on or about February 21, 2025, including on or about the dates enumerated below, in the Eastern District of Michigan, and elsewhere, MOHMMED AL-SHIHABI, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and

11

artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, any money and property owned by, or under the custody or control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services, by submitting or causing the submission of false and fraudulent claims to Medicare.

### Purpose of the Scheme and Artifice

35.   Paragraph 22 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

36.   Paragraphs 23 through 32 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

37.   On or about the dates specified below, in  the Eastern District of Michigan, and elsewhere, MOHMMED AL-SHIHABI, in connection with the delivery of and payment for health care benefits, items, and services, and aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury,

12

did knowingly and willfully execute, and attempt to execute, the above-described

scheme and artifice to defraud a health care benefit program affecting commerce, as

defined in Title 18, United States Code, Section 24(b), and to obtain, by means of

materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of said health care benefit

program:

| Count | Medicare Beneficiary | Approximate Claim Service Date | Claim Description | Amount Billed To Medicare |
|-------|---------------------|-------------------------------|-------------------|---------------------------|
| 2 | W.Y. | July 16, 2021 | Home Health Certification | $71.00 |
| 3 | W.Y. | August 12, 2021 | Home Health Services | $1,950.01 |
| 4 | I.S. | August 29, 2022 | Home Health Certification | $71.00 |
| 5 | I.S. | October 24, 2022 | Home Health Services | $950.01 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7) and 28 U.S.C. § 2461)**

38.    The allegations contained in Counts 1 through 5 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture against defendant MOHMMED AL-SHIHABI, pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

39.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C), together with Title 28, United States Code, Section 2461, upon being convicted of the crimes charged in Counts 1 through 5 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

40.    Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crimes charged in Counts 1 through 5 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

41.    <u>Money Judgment</u>:  Property subject to forfeiture includes, but is not limited to a forfeiture money judgment equal to total amount of forfeitable proceeds as a result of defendants' violations as alleged in Counts 1 through 5 of this Indictment.

14

42. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b) and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of MOHMMED AL-SHIHABI, up to the value of such property.

THIS IS A TRUE BILL.

<u>s/Grand Jury Forperson</u>
Grand Jury Foreperson

JEROME F. GORGON JR.
United States Attorney

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

RYAN A. PARTICKA
Chief, White Collar Crime Unit
United States Attorney's Office
Eastern District of Michigan

15

_s/Syed Ahmadul Huda_
Syed Ahmadul Huda
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 591-0133
Email: Syed.Ahmadul.Huda@usdoj.gov

Dated: June 17, 2025

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover | Case: 2:25-cr-20450<br>Assigned To : Goldsmith, Mark A.<br>Referral Judge: Patti, Anthony P.<br>Assign. Date : 6/17/2025<br>Description: INDI USA V. AL-SHIHABI (NA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete ............... .. ... ........

| Companion Case Information | Companion Case Number: 24-20306 |
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: Hon. Brandy R. McMillion |
| ☒ Yes      ☐ No | AUSA's Initials:    S A H |

Case Title: USA v.  Dr. Mohmmed Al-Shihabi

County where offense occurred :  Wayne County

Check One:      ☒ Felony              ☐ Misdemeanor              ☐ Petty

    ✓ Indictment/_____Information --- **no prior complaint.**
    _____Indictment/_____Information --- based upon prior complaint [Case number:                    ]
    _____Indictment/_____Information --- based upon **LCrR 57.10 (d) [Complete Superseding section below]**.

## Superseding Case Information

Superseding to Case No: _____          Judge: _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
| Mohmmed Al-Shihabi | 18 U.S.C. § 1347<br>18 U.S.C. § 1349<br>18 U.S.C. § 2 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

June 17, 2025
Date

Syed Ahmadul Huda, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 591-0133
Fax:
E-Mail address: Syed.Ahmadul.Huda@usdoj.gov
Attorney Bar #:  P76498

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.